**LOWENSTEIN SANDLER LLP**
Jeffrey Cohen, Esq. (admitted *pro hac vice*)
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica Weisgerber, Esq. (admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. (admitted *pro hac vice*)
Mitch Carlson, Esq. (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: saltzmzh@debevoise.com
Email: nskaluk@debevoise.com
Email: mcarlson@debevoise.com

**LATHAM & WATKINS, LLP**
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. (admitted *pro hac vice*)
Zachary F. Proulx, Esq. (*pro hac vice* pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: zachary.proulx@lw.com
Email: deniz.irgi@lw.com

*Counsel to Arawak XI, L.P.*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Jointly Administered) |
| BTG Pactual Asset Management US, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Barclays Bank PLC,<br><br>Defendant. | Adv. No. 26-01041 (MBK) |

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**ARAWAK XI, L.P.'S JOINDER TO BARCLAYS BANK PLC'S
MOTION TO STAY OR DISMISS THIS ADVERARY PROCEEDING**

Intervenor Arawak XI, L.P. ("**Arawak XI**") respectfully submits this joinder (this "**Joinder**") to the Motion of Defendant Barclays Bank PLC under Federal Rules of Bankruptcy Procedure 7012(b)(1) and 7012(b)(6) to Stay, Abstain, or Dismiss the Adversary Proceeding [Adv. Pro. Dkt. No. 16] (Barclays' "**Motion**").[2]  Arawak XI joins in and adopts the arguments in the Motion as if fully set forth herein and respectfully submits the following additional grounds in support of a stay or dismissal of this Adversary Proceeding.

**PRELIMINARY STATEMENT**

1.      The Cross-Holder Ad Hoc Group's (the "**Cross-Holder Group**") Complaint seeks declaratory relief with respect to the extent and value of collateral securing liens granted in favor of the Debtors' and other secured creditors like Arawak XI.  Neither the Adversary Proceeding itself nor the relief requested therein is necessary.  This is so because the Cross-Holder Group will have a full and fair opportunity to be heard on, and to litigate, every claim and issue raised in the Adversary Proceeding as part of the plan confirmation process.

2.      A stay or abstention is warranted because the issues raised in the Adversary Proceeding—most notably valuation of collateral and treatment of the secured claims—are inseparable from the plan confirmation process and cannot be meaningfully resolved separate from that process.  This plenary proceeding risks (or perhaps is intended to cause) duplicative discovery, overlapping expert proceedings, and potentially inconsistent rulings, all while the same matters

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Case No. 26-10910, Dkt No. 106] (the "**Interim DIP Order**").

are actively being litigated in connection with confirmation.  A stay or abstention ensures efficient and orderly case administration.

3.      Dual and duplicative litigation in a case of this size, where time is of the essence, is wasteful of both judicial and party resources.  Worse, it invites the risk of inconsistent rulings and results.  Granting the stay requested in the Motion and this Joinder avoids those pitfalls and promotes an efficient and orderly case administration.

4.      Even if the relief sought in the Complaint were appropriately brought via this Adversary Proceeding—and it is not—the Complaint is subject to dismissal because the Cross-Holder Group lacks standing to obtain the relief it seeks.  By the Cross-Holder Group's admission, the declarations it requests would affect the allocation of value between secured and unsecured creditors as classes, expanding the pool of allegedly unencumbered assets available for ratable distribution to all unsecured creditors.  These declarations are quintessential estate claims that belong to the Debtors or a properly authorized representative with standing to assert such claims—not to a self-selected group of noteholders pursuing its own interests under the guise of vindicating creditor rights.

5.      Alternatively, the Adversary Proceeding should be dismissed for lack of standing. The Cross-Holder Group admits that its declaratory judgment claims seek to affect the allocation of value between secured and unsecured creditors as classes, expanding the pool of allegedly unencumbered assets available for ratable distribution to all unsecured creditors.  These are quintessential estate claims that belong to the Debtors or a properly authorized representative—not to a self-selected group of noteholders pursuing its own interests under the guise of vindicating creditor rights.

3

6. This Adversary Proceeding should be stayed or abstained from pending confirmation or, alternatively, dismissed for lack of standing.

**ARGUMENT**

**I. The Adversary Proceeding Raises Issues That Can and Should Be Resolved in Plan Confirmation Proceedings**

7. The Adversary Proceeding seeks declaratory relief regarding the scope of liens granted for the benefit of Arawak XI and other secured lenders, and the valuation of collateral securing those liens, under 11 U.S.C. § 506(a) and Federal Rule of Bankruptcy Procedure 3012. *See* Compl. ¶¶ 49–50, 54. Section 506(a) of the Bankruptcy Code governs the determination of secured status and the amount of a secured claim, which depends on the value of the underlying collateral and the proposed disposition or use of such property. *See* 11 U.S.C. § 506(a)(1).

8. The Complaint asks the Court to determine which assets are allegedly "unencumbered," to fix the fair market value of collateral securing the secured debt facilities, and to determine the amount of secured claims for purposes of calculating recoveries "*under the [Debtors'] Plan.*" Compl. ¶ 35 (emphasis added). In the Third Circuit, when valuation is undertaken to determine secured status for plan purposes, it is performed in connection with confirmation. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 141–43 (3d Cir. 2012) (holding that, where a debtor proposes to retain collateral under a plan, the relevant valuation for purposes of determining secured status is measured as of or near confirmation). These determinations bear directly on plan treatment, voting, and confirmation and are properly resolved in the confirmation process. *Id.*

**II. The Court Should Exercise Its Discretion to Stay This Proceeding**

9. The Court possesses broad discretion to control its docket and to stay proceedings in the interest of judicial economy and efficient administration of the estate. 11 U.S.C. § 105(a)

4

("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").  Where parallel litigation mirrors or implicates issues that are central to and being litigated in connection with plan confirmation, courts may—and often do—exercise that discretion to defer adjudication of the parallel litigation.  *See, e.g., In re Financial Oversight & Management Bd. for Puerto Rico*, 617 B.R. 397, 413 (D.P.R. 2020) (staying adversary proceeding where issues raised could be litigated through claim objections and contested matters in the confirmation process, and concluding doing so served judicial economy and orderly case administration).

10.     Staying this Adversary Proceeding in deference to plan confirmation proceedings is particularly warranted because valuation under section 506(a) is context-dependent.  The value of property that secures the repayment of a claim is to be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property."  11 U.S.C. § 506(a)(1).  Courts have recognized that this language ties valuation to the treatment of collateral under a proposed plan.  *See Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 962–65 (1997) (instructing that "the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." (quoting 11 U.S.C. § 506(a)(1))); *In re Heritage Highgate*, 679 F.3d at 143 & n.9 (holding that "the fair market value of the [collateral] as of the confirmation date controls whether [creditors'] claims are secured," because confirmed plan called for debtor to retain collateral, and affirming the "appropriate time" to assess value was "on, or close to, the plan's confirmation date"); *see also In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 799 (5th Cir. 1997) (holding that valuation under Section 506 was properly determined as of confirmation and depended on proposed treatment of the property under the plan).

11.     Because valuation of collateral, in the chapter 11 plan context, must be determined as of or near the confirmation date, any determination of collateral value or secured claim amount in advance of or untethered to confirmation would occur in a factual and legal vacuum.  The treatment and valuation of secured claims against the Debtors remain subject to the plan confirmation process.  Absent a confirmed plan, the Court cannot meaningfully assess how the collateral will be used, retained, or otherwise treated for purposes of Section 506(a).  Courts therefore defer valuation determinations that are integral to plan treatment until confirmation, when the relevant context is concrete.  *See, e.g.*, *Financial Oversight & Management Bd. for Puerto Rico*, 617 B.R. at 413.  Proceeding now would risk issuing findings that may be rendered academic—or require reconsideration—once a plan is confirmed.

12.     This Adversary Proceeding proposes to duplicate confirmation-related discovery, require overlapping expert valuation evidence, and risk inconsistent determinations.  In the context of plan confirmation, the Cross-Holder Group has already sought extensive discovery from the Debtors and other entities relating to the very topics it purports to place at issue in the Adversary Proceeding.  *See, e.g.*, The Cross-Holder Ad Hoc Group's Second Set of Requests for Production of Documents and First Set of Interrogatories Directed to the Debtors (attached hereto as **Exhibit A**), at Request for Production Nos. 13–25 & Interrogatories Nos. 1–2.  Tellingly, the Cross-Holder Group does not allege it can obtain this discovery only through the Adversary Proceeding.  Nor could it, because these requests preceded the Adversary Proceeding.  Any fact or expert discovery in the Adversary Proceeding would be redundant of what is already being pursued as part of confirmation litigation in the main bankruptcy case.

13.     Courts have inherent discretion to stay proceedings to promote judicial economy and avoid duplicative litigation like that posed by the Adversary Proceeding.  *See Hertz Corp. v.*

*The Gator Corp.*, 250 F. Supp. 2d 421, 424–25 (D.N.J. 2003) (recognizing a court's authority to stay proceedings in the interest of fair and efficient adjudication).  This Court should exercise that authority here.  Far from prejudicing any party, a stay would preserve the parties' rights while allowing the structured and already-scheduled confirmation process to proceed in an orderly and unified manner.[3]

14.     The Cross-Holder Group's invocation of Bankruptcy Rule 3012 as a basis for this Adversary Proceeding underscores why the determinations it seeks should be resolved in connection with plan confirmation.  Indeed, Rule 3012 provides that secured claim amount determinations are resolved by contested matter or claim objection proceedings, rather than by a plenary proceeding.    Fed. R. Bankr. P. 3012(b)(1).  By contrast, Bankruptcy Rule 7001(b) expressly *excludes* "proceeding[s] under Rule 3012" from the categories of matters that are appropriately brought by adversary proceeding.  Fed. R. Bankr. P. 7001(b).  Rule 3012 exposes, rather than aids, the Cross-Holder Group.

**III.     The Cross-Holder Group Lacks Standing to Prosecute Estate Claims**

15.     As an alternative to a stay, the Adversary Proceeding could be dismissed as a matter of law based on standing grounds.  The Cross-Holder Group lacks both statutory authority under the Bankruptcy Code to prosecute estate causes of action and constitutional standing under Article III.  The Court should therefore dismiss the Complaint under Bankruptcy Rule 7012(b)(1) or, alternatively, 7012(b)(6).

16.     As a threshold matter under the Bankruptcy Code, the claims asserted here are property of the Debtors' estates and may be pursued only by the Debtors or a party granted

---

[3] *See Amended Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines* [Case No. 26-10910, Dkt No. 378].

derivative standing by the Court. *See In re Whittaker, Clark, & Daniels*, 663 B.R. 1, 10 (Bankr. D.N.J. 2024) (Kaplan, J.) ("'After a company files for bankruptcy, 'creditors lack standing to assert claims that are property of the estate.'" (quoting *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014))), *aff'd*, 152 F.4th 432 (3d Cir. 2025); *In re Our Alchemy, LLC*, 2017 WL 3037445, at *3 (Bankr. D. Del. July 17, 2017) ("Creditors do not have standing to assert claims where they fail to allege 'any injury suffered personally by [them] but has merely alleged an injury suffered generally by all creditors of the estate.'" (alteration in original) (citation omitted)).  That is because the relief sought in the Complaint would expand the pool of allegedly unencumbered assets, reduce the amount of secured claims, and increase recoveries for unsecured creditors *as a class*.  Indeed, the Complaint alleges that if the relief sought is granted, "the Secured Lenders' secured claim will shrink and property available to satisfy claims of unsecured creditors will grow," with the Unencumbered Assets "shared ratably" among all unsecured creditors.  Compl. ¶¶ 35–36.  These are generalized estate claims that seek to augment estate property and reallocate value among creditor classes.  Under controlling Third Circuit precedent, such claims belong to the estate and may not be prosecuted by a creditor absent court authorization and derivative standing.  *See generally Official Comm. of Unsecured Creditors v. Cybergenics Corp.*, 330 F.3d 548 (3d Cir. 2003) (en banc) (establishing framework for derivative standing in bankruptcy); *In re Emoral, Inc.*, 740 F.3d at 879–881 (claims seeking to augment estate are property of the estate).

17.     The Complaint does not and cannot allege that the Cross-Holder Group obtained derivative standing to pursue estate causes of action as required by paragraph 21 of the Interim DIP Order.  Absent such authorization, it lacks standing to assert claims that belong to the Debtors' estates.  *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 844–45 (3d Cir. 2005) (per curiam)

8

("[A]n individual creditor of a debtor may not assert a general claim belonging to all creditors."); *Whittaker, Clark, & Daniels*, 663 B.R. at 10 (similar).

18.     The Cross-Holder Group also fails to allege a concrete and particularized injury sufficient to satisfy the constitutional mandates of Article III.  To establish constitutional standing, a plaintiff must demonstrate an injury in fact that is concrete and particularized.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Here, the Cross-Holder Group's alleged injury is entirely speculative and contingent on multiple future events that have not yet occurred, and thus fails to meet the constitutional standard for standing.

19.     First, the alleged injury depends on the valuation of assets that has not yet been determined.  The Complaint concedes that "[d]etermining the fair market value of the Collateral will be crucial to determining which of the Debtors' assets should be earmarked for satisfaction of the Term Loan Secured Claims" and which assets "should be shared ratably with all holders of unsecured claims."  Compl. ¶ 29.  Equally telling, the Complaint acknowledges that the Cross-Holder Group must first establish that "the Unencumbered Assets have any value at all" before its alleged injury can materialize—that is, before "the Secured Lenders' secured claim will shrink and property available to satisfy claims of unsecured creditors will grow."  *Id*. ¶ 35.  This admission confirms that any injury is entirely speculative and contingent on proving facts not yet established.

20.     Second, the alleged harm is contingent on a series of future events that have not occurred, including confirmation of a plan, final allowance and reconciliation of claims, and ultimate distributions to creditors.  No plan has been confirmed, no final valuation has been completed, and no distributions have been made.  Any asserted shortfall in recovery therefore depends on speculation about how the bankruptcy case will ultimately be resolved.  The alleged injury is thus prospective and hypothetical, not actual or imminent.  *See Clapper v. Amnesty Int'l*

9

*USA*, 568 U.S. 398, 409 (2013) ("'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." (alteration in original) (citation omitted)).

## RESERVATION OF RIGHTS

21.     Arawak XI reserves the right to join in additional arguments raised by any other parties related to the Complaint or the Motion, and to participate in and be heard on all matters related to the Complaint or the Motion.

## CONCLUSION

22.     For the foregoing reasons, and those set forth in Barclays' Motion, Arawak XI respectfully requests that the Court stay this Adversary Proceeding pending resolution of the plan confirmation proceedings or, alternatively, dismiss the Adversary Proceeding for lack of standing, and grant Arawak XI such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 10, 2026

**LOWENSTEIN SANDLER LLP**
By */s/ Eric S. Chafetz*
Jeffrey Cohen, Esq. (admitted *pro hac vice)*
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

-and-

**LATHAM & WATKINS, LLP**
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. (admitted *pro hac vice*)
Zachary F. Proulx, Esq. (*pro hac vice* pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: zachary.proulx@lw.com
Email: deniz.irgi@lw.com

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica Weisgerber, Esq. (admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. (admitted *pro hac vice*)
Mitch Carlson, Esq. (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: saltzmzh@debevoise.com
Email: nskaluk@debevoise.com
Email: mcarlson@debevoise.com

*Counsel to Arawak XI, L.P.*

11

# EXHIBIT A

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli (*pro hac vice* pending)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

*Counsel for the Cross-Holder Ad Hoc Group*

**JONES DAY**
Bruce Bennett
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com
(admitted *pro hac vice*)

-and-

Benjamin Rosenblum (admitted *pro hac vice*)
Genna L. Ghaul
Andrew Butler (*pro hac vice* pending)
Benjamin C. Sandberg (*pro hac vice* pending)
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-8312
Facsimile: (212) 755-7306
brosenblum@jonesday.com
gghaul@jonesday.com
abutler@jonesday.com
bsandberg@jonesday.com

*Counsel for the Cross-Holder Ad Hoc Group*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 26-10910 (MBK)<br><br>Judge: Michael B. Kaplan |

**THE CROSS-HOLDER AD HOC GROUP'S SECOND SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES
<u>DIRECTED TO THE DEBTORS</u>**

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

The Cross-Holder Ad Hoc Group re-asserts its continuing objection to the venue of these chapter 11 cases.  The Cross-Holder Ad Hoc Group also objects to any amendment or modification of the venue disclosures included in the Voluntary Petition for Non-Individuals Filing for Bankruptcy, Official Form 201, made under penalty of perjury, signed by counsel, and filed by MCC-Norwood LLC ("Norwood") in the United States Bankruptcy Court for the District of New Jersey on January 29, 2026, under case number 26-10909.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"), as incorporated into the Federal Rules of Bankruptcy Procedure ("FRBP") 7026 and 7034, the Cross-Holder Ad Hoc Group, including Canyon Capital Advisors, LLC (the "Cross-Holder Ad Hoc Group"), hereby requests that the Debtors produce the documents described in the requests below (individually, a "Request," and collectively, the "Requests") in electronic format by email to the undersigned counsel, beginning immediately on a rolling basis and with production to be completed by February 13, 2026 at 5:00 p.m. Prevailing Eastern Time.  The production of documents in response to these Requests shall be in accordance with the definitions and instructions set forth below.

Further, pursuant to FRCP 26 and 33, as incorporated into FRBP 7026 and 7033, the Cross-Holder Ad Hoc Group hereby requests that the Debtors respond to its First Set of Interrogatories ("Interrogatories") and provide verified answers and such information as requested herein no later than February 13, 2026 at 5:00 p.m. Prevailing Eastern Time.  These Interrogatories and the answers thereto are subject to the definitions and instructions set forth below.

**DEFINITIONS**

1.      "You" and "Your" shall mean each of the Debtors, their members, counsels, representatives, agents, experts, investigators, consultants, officers, employees, advisors, including

employees and partners of Kirkland & Ellis, LLP, Kirkland & Ellis International LLP, Cole Schotz P.C., Evercore Group L.L.C., and AlixPartners, LLP, and all others acting on their behalf, including any Affiliate of any Debtor that has acted on any Debtor's behalf.

2.      "Affiliate" shall mean, with respect to any Person, any other Person that, directly or indirectly, controls or is controlled by, or is under common control with, such Person, and shall include the meaning of "affiliate" set forth in section 101(2) of title 11 of the United States Code (the "Bankruptcy Code") as if such person were a debtor in a case under the Bankruptcy Code.

3.      "Assets" shall mean any property, whether tangible or intangible, including, without limitation, any inter-company receivable or payable.

4.      "Backstop Premium" shall mean the backstop premium described in section 4.5(b) of the Insider DIP Credit Agreement.

5.      "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

6.      "Cash Flow Security Agreement" shall mean that certain Cash Flow Guarantee and Collateral Agreement, dated October 29, 2021, by and among LABL, Inc, LABL Acquisition Corporation, certain U.S. subsidiaries of LABL, Inc., and Barclays Bank PLC, as collateral agent, as amended, supplemented, or otherwise modified from time to time.

7.      "Chapter 11 Cases" shall mean the chapter 11 cases filed by the Debtors and currently pending in the Bankruptcy Court under docket number 26-10910.

8.      "Communication" is used in the broadest possible sense and means any internal or external transmission of information (in the form of facts, ideas, inquiries, or otherwise), the information transmitted and any process by which the information is transmitted, whether or not

admissible at trial under the Federal Rules of Evidence.  "Communication" includes written, oral, and electronic exchanges.

9.      "Continued First Day Hearing" shall mean the hearing held before the Bankruptcy Court on February 2, 2026, in the above-captioned chapter 11 cases.

10.      "Cont. First Day Hr'g Tr." shall mean the transcript of the Continued First Day Hearing, filed in the above-captioned chapter 11 cases at Dkt. No. 112.

11.      "Debtors" shall mean Norwood and its debtor affiliates in these Chapter 11 Cases.

12.      "DIP Motion" shall mean the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, Dkt. No. 26.

13.      "Disclosure Statement" shall mean the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, Dkt. No. 18.

14.      "Document" refers to all items subject to discovery under FRBP 7034.  Document includes, by way of example and not limitation, the complete originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, whether written, graphic, pictorial, photographic, mechanical, taped, electronic, computerized, or otherwise, now or formerly in Your possession, custody, or control.  The term "Document" shall specifically include electronically stored information ("ESI") that is reasonably accessible to You, such as, but not limited to, email, social media posts, any documents created on a computer, any data residing on a storage medium, including hard drives (desktop, laptop, or external), servers,

4

jump drives, CDs, and DVDs, any sound or tape recording, and any similar media created or used by any of Your employees, officers, members, agents, or representatives that may have been maintained independently or separately from Your electronic data systems.  The meaning of the word "Document" also includes copies of Documents that are not identical duplicates of the originals and copies of Documents of which the originals are not in Your possession, custody, or control.  In case originals or original non-identical copies are not available, "Document" includes copies of originals.

15.    "Favored Lenders" shall mean the "Lenders" as defined in the Insider DIP Credit Agreement.

16.    "Final DIP Order" shall mean the "Final Order" as defined in the Interim DIP Order.

17.    "First Day Declaration" shall mean the *Declaration of Garret Gable, Chief Restructuring Officer of Multi-Color Corporation and Certain of its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, Dkt. No. 23.

18.    "First Day Hearing" shall mean the hearing held before the Bankruptcy Court on January 30, 2026, in the above-captioned chapter 11 cases.

19.    "First Day Hr'g Tr." shall mean the transcript of the First Day Hearing, filed in the above-captioned chapter 11 cases at Dkt. No. 85.

20.    "Insider DIP Credit Agreement" shall mean that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of February 2, 2026, and attached to the Interim DIP Order as Exhibit 1, as amended, supplemented, or otherwise modified from time to time.

21.     "Insider DIP Facility" shall mean the "DIP Facility" as defined in the Insider DIP Credit Agreement.

22.     "Insider Plan Sponsorship" shall mean the plan sponsorship contemplated by the Disclosure Statement and Plan whereby the Sponsor will retain a controlling interest in the Debtors after these Chapter 11 Cases have concluded.

23.     "Interim DIP Order" shall mean the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, Dkt. No. 106.

24.     "Junior DIP Facility" shall mean the debtor-in-possession financing facility proposed by the Cross-Holder Ad Hoc Group to the Debtors on January 25, 2026.

25.     The "Motion to Dismiss or Transfer" shall refer to the *Cross-Holder Ad Hoc Group's Motion to Dismiss or, in the Alternative, Transfer the Chapter 11 Cases*, *In re Multi-Color Corp.*, Case No. 3:26-bk-10910, Dkt. No. 71 (Bankr. D.N.J. Jan 29, 2026).

26.     "Person" shall mean any individual (that is, a natural person) and any other type of entity whatsoever, no matter how organized, and includes any director, officer, employee, attorney, representative, managers, investigators, or agents working or acting or purporting to act on behalf of any such entity.

27.     "Petition Date" shall mean January 29, 2026.

28.     "Principal Assets" shall mean the principal assets referred to in Sections 4 and 11 of your Petition.

29. "Plan" shall mean the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, Dkt. No. 17.

30. "Prepetition Debt Documents" shall mean all documents governing the Debtors' prepetition capital structure, including, without limitation, all related indentures, credit agreements, security agreements, guarantee agreements, and all other ancillary agreements.

31. "Relating to" shall mean directly or indirectly constituting, containing, embodying, concerning, showing, comprising, reflecting, identifying, stating, referring to, dealing with, commenting on, responding to, describing, involving, mentioning, discussing, recording, supporting, negating, or in any way pertinent to the subject.

32. "Relevant Period" shall mean the period of January 1, 2025, through the present.

33. "Restructuring Support Agreement" or "RSA" shall mean that certain Restructuring Support Agreement, dated January 25, 2026, and attached as Exhibit B to the Disclosure Statement, as amended, supplemented, or otherwise modified from time to time.

34. "Roll-Up Loans" shall mean, collectively, the Interim Roll-up Term Loan Facility and the Final Roll-up Term Loan Facility, each as defined in the Insider DIP Credit Agreement.

35. "Secured Notes Security Agreement" shall mean that certain Notes Collateral Agreement, dated October 29, 2021, by and among LABL, Inc., LABL Acquisition Corporation, certain domestic subsidiaries of LABL, Inc., and Wilmington Trust, National Association, as note collateral agent, as amended, supplemented, or otherwise modified from time to time.

36. "Special Committee" shall have the same meaning as that term is ascribed on page 3 of the Disclosure Statement.

37. "Sponsor" shall mean Clayton, Dubilier & Rice, LLC.

7

38.     The terms "and" and "or" shall have both conjunctive and disjunctive meanings, and the terms "each," "any," and "all" shall mean "each and every."

39.     "Including" shall be construed to mean "including, without limitation."

40.     When appropriate, the singular shall encompass the plural, and vice versa.

41.     Any reference to any third party refers to that person or entity, any predecessor or successor persons or entities, and any of the third party's agents, officers, directors, employees, representatives, attorneys, accountants, assignees, and all other persons acting, or purporting to act, on its behalf or in concert with the third party.

## REQUESTS FOR PRODUCTION INSTRUCTIONS

1.     Scope.  These Requests encompass all information and Documents in Your custody, possession, or control, whether or not such information was prepared by or for You. Information and Documents within Your possession, custody, or control include information and Documents that You have a legal right to obtain, regardless of their source or present location.

2.     Continuing Requests.  These Requests are continuing, to the full extent required or permitted under the FRBP, so as to require supplementary production when You obtain knowledge and access to, or possession, custody, or control of, any Documents not previously produced that are responsive to one or more of these Requests.

3.     Marking and Arrangement.  The Documents produced in response to each Request shall be marked and arranged in such a way as to indicate clearly the Request to which each such Document is responsive.

4.     Privilege or Immunity from Production.  If any Document requested herein is withheld on the basis of any claim of privilege, you are requested to submit, in lieu of any such Document, a written statement (a) identifying the Person(s) who prepared or authored the

8

Document and, if applicable, the Person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepare or transmitted, (c) describing the nature of the Document (e.g. letter, email, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product and (e) identifying the paragraph of the request to which the Document relates.

5.      Destroyed Materials.  If any Documents requested herein were at one time in Your possession, custody, or control, but have since been lost, discarded, or destroyed, the Documents so lost, discarded, or destroyed shall be identified as completely as possible, including the following data: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the Document.

6.      Incomplete Information.  If You contend that no information or Documents exist relating to all or part of a Request, state this contention and respond as fully as possible to the portions of the Request for which information or Documents exist.  Additionally, if any of the requested information cannot be produced in full, it shall be produced to the maximum extent possible, and You shall specify the reasons for the inability to produce the remainder.

7.      Objections.  If any Request, definition, or instruction is objected to in whole or in part, specify all grounds on which the objection rests.  Respond to all portions of each such Request to which no objection is asserted.  In addition, state whether any responsive information has been omitted from a response or whether, and in what way, the search for responsive information has been delimited or circumscribed on the basis of any such objection.

8.      Time Period:  The Relevant Period shall be the time period for each Request, unless otherwise indicated.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

9

1.      All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the negotiation of the terms of, and entry into, the Restructuring Support Agreement, including the timing of such entry.

2.      All Communications and Documents relating to the relationship, intersection, and interdependence of the terms of the Restructuring Support Agreement, the Plan, and the Insider DIP Facility.

3.      All Communications and Documents relating to the sections 8.01 and 12.03(b) of the Restructuring Support Agreement, including, without limitation, all Communications and Documents relating to Your rights, obligations, and fiduciary duties referenced thereunder.

4.      All Communications and Documents relating to the Roll-Up Loans, including, without limitation, all Communications and Documents among and between You, the Favored Lenders, the Sponsor, and any other Person relating to the negotiation of and agreement to the inclusion of the Roll-Up Loans in the Insider DIP Facility.

5.      All Communications and Documents relating to the Backstop Premium, including, without limitation, all Communications and Documents among and between You, the Favored Lenders, the Sponsor, and any other Person relating to the negotiation of and agreement to the inclusion of the Backstop Premium in the Insider DIP Facility.

6.      All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the negotiation of the terms of, and entry into, the Insider DIP Credit Agreement, including the timing of such entry.

7.      All Communications and Documents relating to any marketing process in connection with debtor-in-possession financing sought in these Chapter 11 Cases, including,

without limitation, Your receipt and review of any proposals for debtor-in-possession financing other than the Insider DIP Facility.

8.      All Communications and Documents relating to the Junior DIP Facility, including, without limitation, all Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person discussing the Junior DIP Facility, and all Communications and Documents relating to your consideration of the Junior DIP Facility.

9.      All Communications and Documents relating to Your decision to enter into the RSA before negotiating with the Cross-Holder Ad Hoc Group on the Junior DIP Facility.

10.      All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the negotiation of the terms of, and entry into, the Insider Plan Sponsorship, including the timing of such entry.

11.      All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the Sponsor's retention of majority control of the Debtors after the conclusion of these Chapter 11 Cases.

12.      All Communications and Documents relating to any marketing process conducted in connection with any aspect or feature of a plan of reorganization in these Chapter 11 Cases.

13.      All Communications and Documents referring or relating to the Collateral or Excluded Assets, including the value of any property constituting Collateral or Excluded Assets each as defined in the Cash Flow Security Agreement.

14.      All Communications and Documents referring or relating to the Collateral or Excluded Assets, including the value of any property constituting Collateral or Excluded Assets each as defined in the Secured Notes Security Agreement.

11

15. All Communications and Documents relating to the value of the equity interest of any direct or indirect foreign subsidiary of the Debtors.

16. All Communications and Documents relating to any of the Debtors' "Foreign Intellectual Property," including the value thereof as that term is defined in the Cash Flow Security Agreement and the Secured Notes Security Agreement.

17. All Communications and Documents relating to the value of real property owned by the Debtors.

18. All Communications and Documents relating to the value of real property leased by the Debtors.

19. All Communications and Documents relating to every piece of machinery and equipment existing on real property owned or leased by the Debtors.

20. All Communications and Documents relating to vehicles owned or leased by the Debtors.

21. All Communications and Documents relating to the Debtors' Equipment Finance Leases, as that term is defined in the Disclosure Statement.

22. All Communications and Documents relating to the Debtors' Building Finance Leases, as that term is defined in the Disclosure Statement.

23. All Communications and Documents relating to the Debtors' First and Second Master Lease Agreements, as those terms are defined in the Disclosure Statement.

24. All Communications and Documents relating to Your calculations of the estimated recoveries reflected on pages 9 through 14 of the Disclosure Statement, including, without limitation, Your calculation of the projected allowed amount of First Lien Secured Claims, as that term is defined in the Disclosure Statement.

12

25. All Communications and Documents relating to Your calculation of the First Lien Deficiency Claims, as that term is defined in the Plan.

26. All Communications and Documents relating to any meeting of the board of directors of any of the Debtors or board action taken with or without a meeting over the past five years, including meeting minutes, resolutions, consents, or the like.

27. All Communications and Documents relating to any meeting of the Special Committee since its inception.

28. All Communications and Documents relating to the selection of the members of the Special Committee.

29. All Communications and Documents relating to the compensation of the members of the Special Committee.

30. All Communications and Documents relating to the retention any professionals for the Special Committee.

31. All Communications and Documents relating to the consideration, evaluation, and approval of the RSA, Insider DIP Facility, Insider Plan Sponsorship, Disclosure Statement, and Plan.

32. All Communications and Documents relating to the classification of claims into Classes 4 and 5, as defined in the Disclosure Statement, including Communications and Documents relating to the classification of First Lien Deficiency Claims and Unsecured Notes Claims together in Class 5.

33. All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the releases set forth in Article VIII of the Plan.

34. All Communications and Documents relating to the New Debt, as that term is defined in the Disclosure Statement, including, without limitation, All Communications and Documents relating to the negotiation of the terms and quantum of the New Debt.

35. All Communications and Documents relating to the New Common Equity, as that term is defined in the Plan, including, without limitation, All Communications and Documents relating to the negotiation of the terms, quantum, distribution and allocation of the New Common Equity.

36. All Communications and Documents relating to the New Preferred Equity, as that term is defined in the Plan, including, without limitation, All Communications and Documents relating to the negotiation of the terms and quantum, distribution and allocation of the New Preferred Equity.

37. All Communications and Documents relating to the New Warrants, as that term is defined in the Plan, including, without limitation, All Communications and Documents relating to the negotiation of the terms, distribution, allocation and quantum of the New Warrants.

38. All Communications and Documents relating to the MIP, as that term is defined in the Plan.

39. All Communications and Documents between or among You and any other Person relating to an analysis of whether creditors would receive more under the Plan than in a Chapter 7 liquidation.

40. All Communications and Documents between or among You and any other Person relating to feasibility of the Plan.

14

41.     All Communications and Documents You used to prepare the Financial Projections, Valuation Analysis, and Liquidation Analysis, attached to the Disclosure Statement as Exhibits C, D, and E, respectively.

42.     All Communications and Documents relating to the out-of-court restructuring transaction You negotiated with the Cross-Holder Ad Hoc Group.

43.     All Communications and Documents relating to Your statement that the Debtors needed to make "roughly 90 million" dollars in payments during "the first part" of the week beginning February 1, 2026.  *See* First Day Hr'g Tr. at 183:14-184:9.

44.     All Communications and Documents relating to Your statement that the Debtors required the Bankruptcy Court to approve $35 million of debtor-in-possession financing before the morning of February 2, 2026.  *See* First Day Hr'g Tr. at 185:3-12; 205:7-21.

45.     All Communications and Documents relating to Your cash balances and ability to make payments during the week of February 1, 2026.

46.     All Communications and Documents between or among any of You, the Favored Lenders, the Sponsor, and any other Person relating to the interim relief requested under Insider DIP Facility, including, without limitation, any changes to that requested relief in between the First Day Hearing and the Continued First Day Hearing.

47.     All Communications and Documents relating to Your statement at the Continued First Day Hearing that the Debtors only required $125 million of interim debtor-in-possession financing.  Cont. First Day Hr'g Tr. at 5:15-24.

48.     All Prepetition Debt Documents, including, without limitation, all drafts of the same.

15

49.     All Documents governing the Insider DIP Facility, including, without limitation, all related indentures, credit agreements, security agreements, guarantee agreements, all other ancillary agreements, and all drafts of any of the foregoing.

50.     All "Definitive Documents," as that term is defined in the Restructuring Support Agreement, including, without limitation, all drafts of the same.

51.     All Communications and Documents relating to the disqualification of any entity as a lender under the facilities governed by the Prepetition Debt Documents or the Insider DIP Facility, including, without limitation, any list of disqualified lenders.

52.     All Communications and Documents that support or otherwise relate to Your statement that You have "run many competitive processes" and the process for these Debtors "was about the most competitive." *See* First Day Hr'g Tr. at 14:8-9.

## INTERROGATORY INSTRUCTIONS

1.     If the answer to any part of an Interrogatory is not presently known or available, please furnish all information currently known or available and specify each portion of the Interrogatory that cannot be completely answered and explain the reasons why the Interrogatory cannot be fully answered.

2.     All information requested herein is to be set forth as if it is in the possession, custody or control of, or is available or accessible to You or any of Your agents, consultants, counsel, investigators, employees, representatives, or any other Person or Persons acting for You or on Your behalf.

3.     Pursuant to Federal Rule of Civil Procedure 33, as incorporated into Federal Rule of Bankruptcy Procedure 7033, these Interrogatories are continuing in nature and require You to

16

file a supplemental response and/or provide supplemental responsive Documents if You

subsequently obtain additional or different information or Documents before trial.

4.      Whenever You are asked to "identify" a natural Person, You are requested to

provide the following information with respect to such Persons:

a.   his or her name; and

b.   his or her current or last known residence, address, and telephone number.

5.      Whenever You are asked to "identify" or "describe" a Document, You are

requested to provide the following information with respect to such Documents:

a.   the nature of the Document (*e.g.*, letter, memorandum);

b.   the identity of the Person(s) who prepared the Document;

c.   the identity of the Person(s) who prepared the Document;

d.   the identity of the Person(s), if any, to whom the Document was directed, addressed,

sent, or delivered;

e.   the date, if any, on which the Document was created or revised;

f.   the present location of the Document; and

g.   a summary of the contents of the Document.

6.      When asked to identify or describe a Document, You may attach a copy of the

requested Document to an Interrogatory answer in lieu of setting forth such identification.

7.      Whenever You choose to attach or refer to copies of Documents in connection with

an answer to any of the Interrogatories, You should, in addition to providing copies of each

Document, provide the following information if it does not appear on the face of such Document:

a.   the date of the Document;

b.   who prepared and/or signed the Document; and

17

c.  each Person who was an addressee or other recipient of the Document.

8.  If any Document identified or requested for production was at any time, but is not presently, in Your possession, custody, or control, state with respect to each such Document:

a.  each author of the Document;

b.  each Person who, to Your knowledge, information, or belief, received, read or, saw the Document;

c.  the date, if any, which the Document bears;

d.  a summary of the contents of the Document;

e.  the Person in whose possession, custody, or control the Document is or most recently has been; and

f.  if You believe that the Document has been lost or destroyed, an explanation of the circumstances thereof, including the date and the identity of the Person responsible for such destruction.

9.  Whenever You are asked to "identify" or "describe" a natural Person, the following information should be given:

a.  the Person's full name;

b.  the Person's title and business affiliation as of the time to which the answer relates;

c.  the Person's present title, if any; and

d.  the Person's home and business address.

10.  Whenever You are asked to "identify" or "describe" a Communication as that term is defined herein, and the communication was, in whole or in part, oral, state in addition to the information specifically requested in the subject Interrogatory:

a.  the nature of the Communication (*e.g.*, telephone call, conference);

18

b.  each participant in, and witness to, the Communication;

c.  the Person(s) initiating the Communication;

d.  the date and time when the Communication took place;

e.  the location where the Communication took place, including, in the case of a telephone call, the points between or among which the call took place; and

f.  a detailed description of the substance of the Communication, including but not limited to, the substance of the positions, arguments or assertions of each party expressed or otherwise indicated in the Communication.

11.  Whenever You are asked to "identify" or "describe" an audio and/or visual recording, state, with respect to each recording:

a.  the contents of the recording;

b.  the names of the Person(s) whose voice and/or actions appear on the recordings;

c.  the individual(s) who made the recording;

d.  at whose direction the recording was made;

e.  whether there is a written transcript of the recording; and

f.  the location of the recording.

12.  Whenever You are asked to "identify" or "describe" a transaction, event, incident, or occurrence, You are requested to provide the following information:

a.  the date thereof;

b.  each Person involved; and

c.  the location of the transaction, event, incident, or occurrence.

19

13.     To "describe the factual basis for" means to provide a complete factual summary of each element of the claim, allegation, or denial. The summary should chronologically describe each and every fact, action, and occurrence that relates to the particular claim, allegation, or denial.

14.     In the event You assert any form of objection or privilege as a ground for not answering an Interrogatory, set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the Interrogatory, the balance of the Interrogatory should be answered in full.

15.     If in answering these Interrogatories You claim any ambiguity in interpreting either an individual Interrogatory or a definition or instruction applicable thereto, such claims shall not be utilized by You as a basis for refusing to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding.

16.     The Relevant Period shall be the time period for each Request, unless otherwise indicated.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:** Please provide and identify with particularity an inventory of any and all Assets or other property that You contend is Collateral, as that term is defined in the Cash Flow Security Agreement.

**INTERROGATORY NO. 2:** Please provide and identify with particularity an inventory of any and all Assets or other property that You contend is Collateral, as that term is defined in the Secured Notes Security Agreement.

Dated:  February 9, 2026

**WOLLMUTH MAHER & DEUTSCH LLP**

/s/__*Paul R. DeFilippo*_____

Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli (*pro hac vice* pending)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Email: pdefilippo@wmd-law.com
　　　jlawlor@wmd-law.com
　　　jpacelli@wmd-law.com


**JONES DAY**

Bruce Bennett (admitted *pro hac vice*)
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
Email: bbennett@jonesday.com

-and-

Benjamin Rosenblum (admitted *pro hac vice*)
Genna L. Ghaul
Andrew Butler (*pro hac vice* pending)
Benjamin C. Sandberg (*pro hac vice* pending)
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-8312
Facsimile: (212) 755-7306
Email: brosenblum@jonesday.com
　　　gghaul@jonesday.com
　　　abutler@jonesday.com
　　　bsandberg@jonesday.com

*Counsel for the Cross-Holder Ad Hoc Group*

21