UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 443-3543
Email: Brodya@gtlaw.com

-and-

**CAHILL GORDON & REINDEL LLP**
Joel Moss, Esq. (admitted *pro hac vice*)
David G. Januszewski, Esq. (admitted *pro hac vice*)
Jordan Wishnew, Esq.
Jason M. Hall, Esq. (admitted *pro hac vice*)
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Email:　　　JMoss@cahill.com
　　　　　　DJanuszewski@cahill.com
　　　　　　JWishnew@cahill.com
　　　　　　JHall@cahill.com
*Co-Counsel for Defendant Barclays Bank PLC*

|  |  |
|---|---|
| In re: | Chapter 11 |
|  |  |
| MULTI-COLOR CORPORATION, *et al.*, | Case No.: 26-10910 (MBK) |
|  |  |
| Debtors.[1] | Judge: Michael B. Kaplan |
|  |  |
| BTG Pactual Asset Management US, LLC, BTG Pactual Absolute Return Master Fund, L.P., Canyon Capital Advisors LLC, The Canyon Value Realization Master Fund, L.P., River Canyon Fund Management LLC, River Canyon Total Return | Adv. Pro. No.: 26-01041 (MBK) |

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

Bond Fund, Owl Creek Asset Management, L.P., Owl Creek Credit Opportunities Master Fund, L.P., Shenkman Opportunistic Credit Master Fund LP, Third Point LLC, and Third Point Master Fund LP,

          Plaintiffs

          v.

Barclays Bank PLC,

          Defendant.

**REPLY IN FURTHER SUPPORT OF DEFENDANT BARCLAYS BANK PLC'S MOTION UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 7012(b)(1) AND 7012(b)(6) TO STAY, ABSTAIN, OR DISMISS THE ADVERSARY PROCEEDING**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT....................................................................................................................... 4

I.    THE COURT SHOULD STAY THIS ADVERSARY PROCEEDING PENDING PLAN

CONFIRMATION......................................................................................................... 4

A.    Resolution of the CHAHG's Claims Here Would Be Duplicative of the Pending

Confirmation Process.......................................................................................... 4

B.    A Stay Will Not Prejudice the CHAHG. ........................................................... 9

II.    ABSENT A STAY, THE COURT SHOULD ABSTAIN FROM HEARING THIS

PROCEEDING. ........................................................................................................ 11

III.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR

LACK OF STANDING. ............................................................................................. 14

A. The CHAHG's Claims Are Generalized Claims Requiring Derivative Standing. .......... 15

CONCLUSION.................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bechtel Corp.* v. *Local 215, Laborers' International Union of North America, AFL-CIO*,
544 F.2d 1207 (3d Cir. 1976) .................................................................................................... 11

*In re Bird*,
229 B.R. 90 (Bankr. S.D.N.Y. 1999) ..................................................................................... 9, 10

*In re BlockFi, Inc.*,
No. 22-19361, 2024 WL 2145722 (Bankr. D.N.J. May 13, 2024)........................................... 12

*In re C.P. Hall Co.*,
513 B.R. 540 (Bankr. N.D. Ill. 2014) ...................................................................................... 18

*Cen-Pen Corp.* v. *Hanson*,
58 F.3d 89 (4th Cir. 1995) .......................................................................................................... 5

*In re Commercial Western Finance Corp.*,
761 F.2d 1329 (9th Cir. 1985) .................................................................................................... 5

*Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
Corp.* v. *Chinery*,
330 F.3d 548 (3d Cir. 2003) ...................................................................................................... 17

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014) ............................................................................................... 16–17

*In re EMS Financial Services, LLC*,
No. 12-71324, 2013 WL 64755 (Bankr. E.D.N.Y. Jan. 4, 2013)............................................. 10

*In re Financial Oversight & Management Board for Puerto Rico*,
617 B.R. 397 (D.P.R. 2020) ........................................................................................................ 7

*In re Hawaiian Telcom Communications, Inc.*,
430 B.R. 564 (Bankr. D. Haw. 2009)......................................................................................... 6

*In re Heritage Highgate, Inc.*,
679 F.3d 132 (3d Cir. 2012) ....................................................................................................... 7

*Iowa Network Services, Inc.* v. *AT&T Corp.*,
No. 3:14-cv-3439, 2019 WL 4861438 (D.N.J. Oct. 2, 2019)................................................... 11

*Kinch* v. *Caufield*,
No. 23-02076, 2024 WL 1653667 (D.N.J. Apr. 17, 2024)................................................. 14–15

*In re Kressler*,
252 B.R. 632 (Bankr. E.D. Pa. 2000) ......................................................................................... 5

*Landis* v. *North America Co.*,
299 U.S. 248 (1936) ....................................................................................................... 9

*In re Mansaray-Ruffin*,
530 F.3d 230 (3d Cir. 2008) ....................................................................................... 5, 6

*In re Mechanicsburg Fitness, Inc.*,
No. 1:16-bk-01897 (Bankr. M.D. Pa. Jan. 19, 2018) ................................................ 18–19

*In re Mechanicsburg Fitness, Inc.*,
592 B.R. 798 (Bankr. M.D. Pa. 2018) .......................................................................... 19

*In re MicroBilt Corp.*,
484 B.R. 56 (Bankr. D.N.J. 2012) ................................................................................ 13

*In re OMNA Medical Partners, Inc.*,
257 B.R. 666 (Bankr. D. Del. 2000) ............................................................................ 12

*In re Rosenblum*,
545 B.R. 846 (Bankr. E.D. Pa. 2016) ........................................................................... 11

*In re Strano*,
248 B.R. 493 (Bankr. D.N.J. 2000) ............................................................................. 14

*In re Tronox Inc.*,
855 F.3d 84 (2d Cir. 2017) .......................................................................................... 16

*Truck Insurance Exchange* v. *Kaiser Gypsum Co.*,
602 U.S. 268 (2024) .................................................................................................... 17

*In re Vanhook*,
468 B.R. 694 (Bankr. D.N.J. 2012) ............................................................................. 12

*In re Weinstein Co. Holdings, LLC*,
595 B.R. 455 (Bankr. D. Del. 2018) ............................................................................ 17

*In re Windstream Holdings, Inc.*,
No. 19-22312 (Bankr. S.D.N.Y. May 14, 2020) ............................................................ 6

Defendant Barclays Bank PLC ("Barclays") respectfully submits this reply memorandum of law in further support of its motion to stay this adversary proceeding or, in the alternative, abstain from hearing this adversary proceeding or dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

1.      The CHAHG's Opposition confirms exactly what Barclays' opening brief demonstrated—this adversary proceeding is a transparent delay tactic designed to derail the Debtors' timely emergence from bankruptcy and extract value for the CHAHG's substantially underwater debt positions.  Despite the availability of more efficient procedural means to obtain the desired relief from the Court, the CHAHG launched an unnecessary, duplicative, and parallel litigation as a means to exert pressure on other parties in interest in these Chapter 11 cases, which only serves to waste limited judicial and estate resources.[2]  Moreover, acknowledging the availability of more efficient procedures and underscoring the CHAHG's efforts to use incongruous procedural avenues to cause needless delay, even before filing this adversary proceeding, the CHAHG, in connection with the plan confirmation process, sought and obtained discovery on the various issues that form the basis of this supposed dispute.

2.      The CHAHG's arguments against a stay (or, in the alternative, abstention or dismissal) rely on its belief that its action to determine the "scope" of Barclays' liens under the

---

[1] Unless otherwise noted, internal citations and quotations are omitted, and emphasis is added.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Defendant's moving brief (Adv. Pro. No. 26-01041, ECF No. 16) ("Motion" or "Br.").

[2] Indeed, in the CHAHG's objection to the Final DIP Order (Case No. 26-10910, ECF No. 426, ¶ 96 n.6), the CHAHG admits that it filed this adversary proceeding for a purely preemptive purpose—namely, to avoid the risk that other parties in interest might claim that the CHAHG waived its "opportunity to challenge the claims that the Secured Creditors' liens are substantially all encompassing." *Id.*  However, Barclays is not saying the CHAHG is waiving any rights if it had not commenced this adversary proceeding.  Rather, the appropriate proceeding to address any issues raised by the Complaint is in connection with plan confirmation.

Term Loan Security Agreement can only be addressed *via* an adversary proceeding.  However, Count I of the Complaint is a manufactured dispute in order to invoke an adversary proceeding as a procedural vehicle simply to prolong and delay the plan confirmation process.  The Term Loan Security Agreement is unambiguous and sets forth specific property categories not subject to Barclays' prepetition liens.  The CHAHG does not challenge the validity or priority of the liens held by Barclays.  Rather, in light of certain statements made by the Debtors in filed pleadings in these Chapter 11 cases, the CHAHG solely seeks clarification from the Court as to what specific items of property constitute "Excluded Assets" and to quantify the value of such "Excluded Assets."  In sum, the Complaint is nothing more than Plaintiffs seeking a determination of the amount of the secured claim held by Barclays for the benefit of certain prepetition secured parties and, relatedly, the allocation of value among secured and unsecured parties.  Contrary to the CHAHG's assertions, such relief can be provided by the Court pursuant to Bankruptcy Rule 3012 *via* a contested matter, not an adversary proceeding, and determined in connection with plan confirmation.

3.      Moreover, the CHAHG will not be prejudiced by a stay of this adversary proceeding because, as it acknowledges, Bankruptcy Rule 3012 permits the Court to determine the value of a secured claim, and Rule 7001 "excepts disputes under Bankruptcy Rule 3012 from the adversary proceeding mandate."  Opp. ¶ 36.  Accordingly, pursuant to Bankruptcy Rule 3012(b)(1), the very issues raised in this adversary proceeding can be brought by motion.  Nevertheless, the CHAHG continues to pursue a wasteful adversary proceeding despite its acknowledgements that these issues will be addressed at the confirmation hearing.  Further, it is highly unlikely that the Plaintiffs, even if successful in their dispute, could impact confirmation of the Debtors' plan—since the overwhelming majority of claims in Class 5 have approved the

2

Debtors' plan.  (*See* Case No. 26-10910, ECF No. 482, Ex. A (83.08% of Class 5 claimants accepted the Plan)).  Indeed, as set forth in the Secured Ad Hoc Group's Joinder to Barclays' Motion, should the CHAHG be successful in its desired value reallocation among Classes 4 and 5, that would only increase the amount of Class 5 claims whose holders have voted to accept the very plan the CHAHG is opposing.  (Adv. Pro. No. 26-01041, ECF No. 35, ¶ 5).

4.      All of the above is to say that this adversary proceeding is a significant waste of judicial and estate resources yielding no legal benefit to the CHAHG even if the CHAHG was successful in its litigation.  But that does not seem to concern the CHAHG as it appears content to angle for further delay in the hopes of extracting hold-up value from the Debtors, the Sponsor, and the Debtors' secured creditors.  In contrast, the harm to the Debtors' reorganization efforts resulting from any such needless delay is very real.  As such, using the broad discretion afforded it by existing case law, and based on the facts and circumstances here, the Court should stay this adversary proceeding or, alternatively, abstain from hearing it.

5.      The CHAHG also attempts to dress up its claims as a routine "creditor-on-creditor dispute," Opp. ¶ 29, in an effort to distract from the allegations in its Complaint that underscore the generalized nature of the injury that the CHAHG is trying to vindicate, and thereby avoid the need to obtain derivative standing under binding Third Circuit precedent in order to press forward with its Complaint.  However, the Complaint belies that characterization, because by its admission, the relief it seeks would affect the largest class of unsecured creditors equally—not just the CHAHG specifically—and any argument in the Opposition cannot alter the unambiguous allegations of the Complaint.  The generalized claims and injuries that the Complaint raises are paradigmatic estate claims under binding Third Circuit precedent, and, as such, the CHAHG was required, but failed, to seek court approval to obtain derivative standing to prosecute the

3

Complaint.  As such, the Court should, if it is not inclined to stay this adversary proceeding or

exercise its authority to abstain from hearing it, dismiss the Complaint for lack of standing.

6.      This Court should see through the CHAHG's misdirection and obfuscations and

recognize this case for what it is—a tactic designed to obscure the fundamental reality:  this

adversary proceeding is unnecessary, duplicative, and filed for the purpose of delay.  The Court

should stay this adversary proceeding pending confirmation of a reorganization plan or, in the

alternative, abstain from hearing it or dismiss the Complaint for lack of standing.

## ARGUMENT

**I.      THE COURT SHOULD STAY THIS ADVERSARY PROCEEDING PENDING
PLAN CONFIRMATION.**

7.      This Court should exercise its broad discretion to stay this adversary proceeding in

the interest of judicial economy, to continue the reasonable, efficient administration of the main

bankruptcy cases, and to avoid duplicative litigation.  *See* Br. ¶¶ 23–24 (collecting cases).

**A.  Resolution of the CHAHG's Claims Here Would Be Duplicative of the Pending
Confirmation Process.**

8.      While the CHAHG acknowledges "[its] valuation issues . . . will arise at

confirmation," it argues this adversary proceeding is nonetheless necessary because of the alleged

"threshold question" of the scope of the liens granted under the Term Loan Security Agreement.

Opp. ¶ 32.  But as Barclays explained in the Motion, there is no real dispute as to which categories

of assets are defined as "Excluded Assets," and thus subject to exclusion from the grant of liens

under the Term Loan Security Agreement, *see* Br. ¶ 26, because the document is unambiguous and

defines the specific categories of "Excluded Assets."  Plaintiffs' purported lien scope dispute is

based entirely on allegedly false statements made in certain filings by the Debtors, Compl. ¶ 34,

which is a contention that is more properly raised as an objection to confirmation—not an

4

independent basis for a separate adversary proceeding.  Moreover, the adequacy of the information

contained in the disclosure statement, in which the allegedly false statements appear, is an issue to

be addressed at the combined hearing on approval of the disclosure statement and confirmation of

the Plan.  (*See* Case No. 26-10910, ECF No. 378, at 3 (explaining that parties can file objections

to the adequacy of the information contained in the disclosure statement)).  As such, the dispute

that exists is solely about valuation of encumbered assets and unencumbered assets and the Court

need not address that dispute in the context of an adversary proceeding given that the confirmation

process is well underway addressing that exact issue.  Br. ¶¶ 29–30.

9.      The CHAHG cites a litany of cases to suggest that Bankruptcy Rule 7001 mandates

***this*** adversary proceeding, on account of it supposedly involving "lien challenge[s]," yet such

cases are factually distinguishable from the matter before the Court.  These cases, which have no

precedential value, each involve a debtor-in-possession or trustee's challenge to the ***validity or***

***existence*** of the underlying liens, unlike the issue in Count I of this adversary proceeding.  *See In*

*re Mansaray-Ruffin*, 530 F.3d 230, 235 (3d Cir. 2008) ("The three concepts included in Rule

7001(2)—validity, priority, and extent—all pertain in some way to 'the basis of the lien itself.'");

*In re Kressler*, 252 B.R. 632, 635 (Bankr. E.D. Pa. 2000) (holding that debtor may not cramdown

and avoid a secured creditor's lien through the chapter 13 plan confirmation process without filing

an adversary complaint to avoid the lien); *Cen-Pen Corp.* v. *Hanson*, 58 F.3d 89, 93 (4th Cir. 1995)

(holding that confirmation of a chapter 13 plan cannot have preclusive effect as to validity of a

lien); *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1338–39 (9th Cir. 1985) (holding

that trustee improperly sought to avoid security interests without first commencing an adversary

proceeding).

10.     The CHAHG could have sought relief under Rule 3012 in the main bankruptcy proceeding rather than commencing a time-consuming and expensive standalone adversary proceeding that is rendered entirely unnecessary by the ordinary operation of the confirmation process.  Br. ¶ 25.  Indeed, the Third Circuit in *Mansaray* distinguished the type of "validity" challenges in Plaintiffs' cited cases—which are not present here—from "valuation of collateral" disputes, recognizing that an adversary proceeding is not necessary for the latter.  *See* 530 F.3d at 236.  In *Mansaray*, the debtor affirmatively challenged the very existence of the mortgage lien, claiming violations of the Truth-in-Lending Act entitled her to rescind the mortgage entirely.  *Id.* at 232–33.  Here, by contrast, no party disputes the validity or existence of Barclays' liens; the only real dispute concerns the valuation of the collateral.  Yet, the CHAHG purposely chose an adversary proceeding in its campaign to further delay the main bankruptcy case.

11.     Courts routinely resolve valuation disputes in connection with plan confirmation rather than through standalone proceedings detached from plan treatment.  Br. ¶ 25 (collecting cases).  The CHAHG's attempts to distinguish these cases miss the mark.  The fact that the court in *Hawaiian Telcom* addressed "lien perfection issues" previously, Opp. ¶ 38, is irrelevant because, again, there is no real dispute as to lien scope here.  Rather, this case is about the value of encumbered and unencumbered assets, which is what the court addressed in *Hawaiian Telcom*.  *In re Hawaiian Telcom Communications, Inc.*, 430 B.R. 564, 580–81, 602–03 (Bankr. D. Haw. 2009) (confirming plan after objections regarding value of the debtors' unencumbered assets were heard during the confirmation process).  Moreover, the CHAHG has no response to the fact that the court in *Windstream* addressed **both** a lien dispute and valuation and allocation issues in connection with plan confirmation.  *See In re Windstream Holdings, Inc.*, No. 19-22312 (Bankr. S.D.N.Y. May 14, 2020), ECF No. 2250, at 81–109 (confirming plan upon determination of whether certain of the

6

debtors' assets were or were not encumbered by the secured lenders' claims and resolving dispute as to whether residual unencumbered value was available for recovery by the unsecured creditors upon evaluation of the value of the debtors' assets).  The CHAHG's efforts to distinguish *Financial Oversight & Management Board for Puerto Rico* are equally unavailing.  While *Puerto Rico* is based on PROMESA and is not a Chapter 11 case (which in any event is not a meaningful distinction because PROMESA incorporates many provisions of the Bankruptcy Code), the decision importantly goes to this Court's discretion to stay litigation pending plan confirmation— the very issue at the heart of Barclays' Motion.  *See In re Financial Oversight & Management Board for Puerto Rico*, 617 B.R. 397, 413 (D.P.R. 2020) (holding it "prudent and in the interest of judicial economy to stay th[e] adversary proceeding pending the Court's decision regarding confirmation of the [a]mended [p]lan").  Further, contrary to its argument, Opp. ¶ 37, if the CHAHG has its way, this case ***does*** present harm and inconvenience to the Debtors as it imposes needless delay.

12.     As outlined in the Motion, the crux of the CHAHG's Complaint is the ***valuation of collateral***—an issue which should be reserved for the forthcoming confirmation hearing.  *Id*. ¶ 32. Where, as here, the amount of secured claims under 11 U.S.C. § 506(a) is based on the value of the underlying assets, the relevant valuation analysis will occur as part of the plan confirmation process.  *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 143 (3d Cir. 2012) (where a debtor intended to retain collateral after confirmation, determining the appropriate valuation methodology and holding "that the Bankruptcy Court properly concluded that the fair market value . . . as of the confirmation date controls whether the . . . claims are secured or not").

13.     In addition, the CHAHG's argument that Bankruptcy Rule 7001 ***mandates*** that this adversary proceeding move forward ahead of confirmation because of an alleged "threshold

question," Opp. ¶ 2, is a distraction and belied by the current circumstances of the CHAHG's actions in these Chapter 11 cases. The clarity purportedly sought by Plaintiffs as to collateral valuation can be (and currently is being) addressed through the ongoing confirmation process. Notably, as raised in Arawak's Joinder, in connection with the plan confirmation process, on February 9, the CHAHG served the Debtors with discovery covering the same exact topics it subsequently raised in this adversary proceeding (*i.e.*, the scope of encumbered collateral and valuation). (Adv. Pro. No. 26-01041, ECF No. 36, ¶ 12 ("In the context of plan confirmation, the Cross-Holder Group has already sought extensive discovery from the Debtors."); *see, e.g., id.*, Ex. A at 11 (seeking documents and communications relating to "the value of any property constituting Collateral or Excluded Assets")). The Debtors were requested to provide responses to those discovery requests on or before February 13, the day before this adversary proceeding was filed, and since then, have been producing documents to Plaintiffs on a rolling basis. It is Barclays' understanding that over a month ago, the Debtors provided an expert report by Mr. Jeffrey Kopa of AlixPartners to the CHAHG's counsel, which valued the Debtors' assets that the Debtors determined to be unencumbered. (Case No. 26-10910, ECF No. 467, ¶ 8 (noting that Mr. Kopa "prepared an estimate of the recovery for the funded debt claims at the U.S.-based Debtor entities based on the range of values set forth in the Valuation Analysis . . . associated with the Plan."); *id.* ¶ 11 ("I also analyzed the categories of potential unencumbered assets and the corresponding treatment under the Waterfall Analysis.")).

14.    The CHAHG has nothing to say to refute these clear examples of the duplicative discovery that will occur if this proceeding goes forward. In addition, as outlined above, there is no real dispute as to what categories of assets are excluded from the secured lenders' collateral package—the Term Loan Security Agreement says what it says and is unambiguous. The only

real dispute is about valuation of encumbered and unencumbered assets and allocation of those pools between classes of creditors. And it is exactly these topics, among others, that the CHAHG's counsel covered with the Debtors' expert witnesses during cross-examination at the March 17, 2026 evidentiary hearing to consider final approval of the Debtors' debtor-in-possession financing. (March 17, 2026 Transcript of Final DIP Hearing ("Mar. 17, 2026 Tr."), at 222-280).

15. Despite the CHAHG's rhetoric, even if an adversary proceeding were the proper vehicle for the issues raised by its Complaint—which it is not—the question of *when* an adversary proceeding should proceed is squarely within this Court's inherent authority to control its docket. And this Court is well within its discretion to stay proceedings in the interest of judicial economy, to avoid duplicative litigation, or to preserve the orderly administration of the bankruptcy cases. *See Landis* v. *North America Co.*, 299 U.S. 248, 254–55 (1936); *see also In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999) ("this court has control over the matters on its docket such that, if an adversary proceeding be premature, the court may defer adjudication"). As set forth above, granting a stay would avoid duplicative discovery, expert reports, evidentiary hearings, and potentially differing outcomes concerning the value of collateral, and would promote judicial economy and the efficient administration of the estates.

**B. A Stay Will Not Prejudice the CHAHG.**

16. Contrary to the CHAHG's assertions, it will not be prejudiced by a stay because no distributions will be made until a plan is confirmed, and, as the CHAHG acknowledges, it will have the opportunity to address the very issues that are the subject in this adversary proceeding when opposing Debtors' reorganization plan during the confirmation process. Indeed, Plaintiffs acknowledge that "the[ir] valuation issues . . . will arise at confirmation." Opp. ¶¶ 32–34. A stay merely ensures that these issues are resolved in the most efficient forum available: the confirmation process. Furthermore, should the Debtors confirm a plan and successfully

reorganize, then the CHAHG recognizes it may not need to pursue this adversary proceeding any further because it would seek to appeal this Court's confirmation and seek a contemporaneous stay of confirmation. *See id.* ¶ 42 ("any attempt by the Debtors or Secured Lenders to determine these issues in the context of plan confirmation will be . . . if necessary, appealed").

17.    By contrast, allowing this proceeding to continue would impose immediate and substantial costs on the estates, require duplicative discovery and expert proceedings on issues that will necessarily be addressed at confirmation, and risk inconsistent adjudications. With mediation scheduled to continue through March 31, 2026 (*see* Case No. 26-10910, ECF No. 492, ¶ 3), and confirmation currently scheduled to start the same day, the CHAHG's insistence on proceeding with parallel litigation is a litigation tactic designed to increase perceived leverage at the expense of the estates. *See* Opp. ¶ 44 ("This Adversary Proceeding should proceed in parallel with mediation to ensure that the Cross-Holder Ad Hoc Group has a meaningful judicial remedy if mediation is unsuccessful."). Forcing other parties in interest to litigate these issues twice over undermines the Chapter 11 process. As noted above, discovery on these very issues is already underway, further necessitating the need for a stay. Accordingly, to avoid wasting estate resources, this proceeding should be stayed. *See In re EMS Financial Services, LLC*, No. 12-71324, 2013 WL 64755, at *8 (Bankr. E.D.N.Y. Jan. 4, 2013) (staying adversary proceeding that "[wa]s premature at this juncture" such that "it would be an inappropriate use of judicial resources for this [c]ourt to determine" factual issues that "will be made" in another proceeding); *see also Bird*, 229 B.R. at 95 ("this court has control over the matters on its docket such that, if an adversary proceeding be premature, the court may defer adjudication").

18.    However, as set forth above, in contrast to the harm to the Debtors' reorganization efforts from the delay caused by this needless adversary proceeding and the costs imposed on the

estates, there is most likely little benefit to the CHAHG if its "claims" are adjudicated, as they stand merely to increase the size of the secured creditors' deficiency claims in Class 5. (Adv. Pro. No. 26-01041, ECF No. 35, ¶ 5). The litigation would most likely not impact confirmation of the Debtors' plan, but only delay confirmation.

19. This Court should not countenance the CHAHG's attempted end-run around the plan confirmation process. With the confirmation hearing currently scheduled to take place in eight days, this adversary proceeding will soon be rendered moot. *See Bechtel Corp.* v. *Local 215, Laborers' International Union of North America, AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."); *see also Iowa Network Services, Inc.* v. *AT&T Corp.*, No. 3:14-cv-3439, 2019 WL 4861438, at *6 (D.N.J. Oct. 2, 2019) ("Where a stay is sought pending resolution of purportedly related litigation, . . . courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action."); *In re Rosenblum*, 545 B.R. 846, 874 (Bankr. E.D. Pa. 2016) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").

20. By the CHAHG's admission, this adversary proceeding should be permitted to proceed in order to pressure the parties because "without the pressure of the Adversary Proceeding, mediation risks being a costly and, ultimately, ineffective exercise." Opp. ¶ 44. A stay of this adversary proceeding would allow the Court-approved structure to lodge Challenges to progress while preserving judicial and estate resources, and ensure that any dispute concerning collateral valuation is resolved at confirmation in an orderly manner with all relevant stakeholders present.

## II. ABSENT A STAY, THE COURT SHOULD ABSTAIN FROM HEARING THIS PROCEEDING.

11

21.     The CHAHG's Opposition fundamentally misapprehends the nature of the permissive abstention inquiry and the flexibility afforded to this Court under 28 U.S.C. § 1334(c)(1).

22.     While the CHAHG recites the twelve-factor test from *In re Vanhook*, 468 B.R. 694, 701 (Bankr. D.N.J. 2012)—which is just one example of a court exercising its discretionary authority to abstain—it ignores the critical principle that governs its application:  courts must weigh these factors "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.*  The mechanical, factor-by-factor approach the CHAHG advocates disregards the holistic balancing this Court is called upon to perform.

23.     Courts in this Circuit have abstained from hearing similarly situated proceedings. *See In re OMNA Medical Partners, Inc.*, 257 B.R. 666, 669 (Bankr. D. Del. 2000) (abstaining from making any determination about the collateral at issue until "a final determination that the accounts receivable and other collateral at issue are property of the Debtor" was made in a parallel action).

24.     In *BlockFi*, this Court set forth a "fact-specific" inquiry employed by courts in this Circuit in evaluating permissive abstention. *In re BlockFi, Inc.*, No. 22-19361, 2024 WL 2145722, at *8 (Bankr. D.N.J. May 13, 2024) (J. Kaplan) (whether a court should abstain "depends on the circumstances of the case").  In so doing, this Court emphasized that "every factor need not be considered." *Id*.  Here, among other reasons, factor one (efficient administration of the estates) and factor nine (burden on the Court's docket) heavily favor abstention.  With confirmation scheduled to occur in eight days, further litigation of this adversary proceeding would be duplicative and highly wasteful of the Court's resources and the estates' resources.

12

25.      The CHAHG's cursory recitation of the abstention factors is premised on the false notion that this proceeding is required to resolve purported lien scope challenges and does not pass muster for the same reasons explained above.  *See* Opp. ¶¶ 46–57.  Again, there is no real dispute as to the validity, scope, and extent of the secured parties' liens; the "Excluded Assets" are clearly defined under the Term Loan Security Agreement.  The CHAHG is simply using Rule 7001 to separately litigate the valuation of collateral, which it acknowledges will be addressed at confirmation.  This is in service of its strategy of causing needless delay in order to exert leverage, or in its parlance, "pressure," to extract more value from the Debtors' estates.  *Id*. ¶ 44.  In reality, this adversary proceeding fragments the administration of core issues concerning collateral valuation and risks inconsistent outcomes.  Abstention would promote judicial economy and the orderly administration of the estates by allowing affected parties to resolve these issues at confirmation.

26.      The CHAHG's argument that Bankruptcy Rule 7001(b) forecloses abstention conflates procedural requirements with jurisdictional discretion.  *Id.* ¶ 46.  The fact that an adversary proceeding is required to determine lien validity (again, an issue not present here) does not deprive this Court of the discretion to abstain from doing so when circumstances warrant.  Contrary to the CHAHG's suggestion, courts retain discretionary authority to decline jurisdiction even over matters enumerated in 28 U.S.C. § 157(b)(2).  *See In re MicroBilt Corp.*, 484 B.R. 56, 66 (Bankr. D.N.J. 2012) ("Even where it has jurisdiction, a bankruptcy court is not compelled to hear a case; the court may, in its discretion, abstain from hearing the matter.").

27.      The CHAHG's contention that abstention would "deprive" it of "any meaningful opportunity to litigate" collateral issues is equally unfounded.  Opp. ¶ 47.  Abstention would not eliminate the CHAHG's ability to address the issues provided for in the Complaint; rather, it

channels those disputes into the plan confirmation process where they can be resolved in a comprehensive proceeding with all affected parties present.  The confirmation hearing affords parties the opportunity to present evidence and argument on contested issues, including collateral valuation under 11 U.S.C. § 506(a).  Abstention avoids piecemeal litigation, reduces the risk of inconsistent outcomes, and ensures that disputes central to plan confirmation are resolved in their proper context.

28.    The efficient administration of the estates is best served by resolving valuation issues at confirmation—a core proceeding over which this Court unquestionably has jurisdiction. Abstention would allow for overlapping issues to be addressed in the central proceeding where they belong.  Courts routinely recognize that judicial economy is served when related matters are addressed comprehensively rather than through parallel proceedings that risk duplicative effort and inconsistent rulings.  *See In re Strano*, 248 B.R. 493, 504 (Bankr. D.N.J. 2000) (finding that "considerations of judicial economy and comity weigh in favor of the bankruptcy court's abstention" where there was "an existing action involving all parties to the lawsuit" and allowing the new action to proceed would result in the separation of overlapping issues).

29.    On balance, permissive abstention is appropriate here given that it would promote the orderly resolution of these bankruptcy cases, minimize the burden on this Court's docket, and prevent a waste of estate resources.

### III.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING.

30.    Rather than seek leave of the Court for derivative standing to bring this proceeding, the CHAHG instead utilizes much of its Opposition to rewrite the allegations of its Complaint in order to avoid dismissal due to lack of standing.  *See, e.g.*, *Kinch* v. *Caufield*, No. 23-02076, 2024 WL 1653667, at *3 (D.N.J. Apr. 17, 2024) (collecting cases and dismissing complaint upon

14

declining to consider "any of Plaintiff's new facts raised in the opposition").  But the CHAHG's

abandonment of its original allegations should not be overlooked.  *Compare, e.g.*, Compl. ¶ 38

(claiming "[b]y entering the requested declaratory judgments . . . the Court can and should begin

the process of ensuring that the Collateral is appropriately valued and that ***unsecured creditors,***

***like Plaintiffs, receive what they are lawfully due***"); *id.* ¶ 30 (alleging "all of the Debtors' other

assets and property that are not explicitly covered in the definition of Collateral are unencumbered

assets . . . ***and should be distributable to unsecured creditors***"); *id.* ¶ 35 (seeking relief "so that

the Debtors can properly calculate the recoveries ***attributable to the Secured Lenders and the***

***unsecured creditors under the Plan***" and alleging "[i]f the Unencumbered Assets have any value

at all . . . then the Secured Lenders' secured claim will shrink and ***property available to satisfy***

***claims of unsecured creditors will grow***"), *with* Opp. ¶ 25 (claiming "Declaratory judgments in

favor of the Cross-Holder Ad Hoc Group on the issues stated in the Complaint ***will not enlarge***

***the estate for the benefit of all unsecured creditors***.").

31.     As explained in Barclays' opening brief, and by the CHAHG's admission, the relief

sought in the Complaint are generalized claims that stand to affect the estates and not just the

CHAHG.  Because the CHAHG has not obtained derivative standing to pursue such claims, the

Complaint should be dismissed.  The CHAHG should not now be able to walk back the allegations

in the Complaint to avoid dismissal based on lack of standing.

**A. The CHAHG's Claims Are Generalized Claims Requiring Derivative Standing.**

32.     Despite the CHAHG's arguments in its Opposition to the contrary, and as explained

in Barclays' opening brief, the relief sought in the Complaint would impact all Class 5 creditors

equally.  *See* Br. ¶¶ 37–38.

15

33.     The CHAHG admits that the issues raised here will "necessarily affect every aspect of plan confirmation," including "the classification of claims" and "the treatment of creditors," yet simultaneously argue that this is simply a "creditor-on-creditor dispute."  Opp. ¶¶ 29, 36–37.  The Court should be "wary of putting form over substance."  *In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017) ("In distinguishing derivative claims from particularized claims exclusive to individual creditors, labels are not conclusive, since plaintiffs often try, but are not permitted, to plead around a bankruptcy.").

34.     Additionally, the CHAHG's focus on the particular types of claims raised in Barclays' cited cases is yet another attempt to distract this Court from the actual relief it seeks— to expand the pool of "Unencumbered Assets" that "should be distributable to unsecured creditors."  Compl. ¶ 30.  These are estate claims under Third Circuit precedent, *see In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014), and no amount of relabeling can transform them into particularized, personal claims.

35.     The CHAHG's newly-minted argument that the Unsecured Notes are "the only claims to lose out in the deal embodied in the Plan" and that the injury is therefore "particularized" to Class 5 Junior Funded Debt Claims is equally unavailing and contradicts its position elsewhere in its Opposition.  *Compare* Opp. ¶ 25 (claiming "[t]he Unsecured Notes . . . are the **only** claims to lose out in the deal embodied in the Plan") (emphasis in original), *with id.* ¶ 21 (acknowledging the CHAHG's claims are only "a part" of the Class 5 Junior Funded Debt Claims).  The Complaint does not draw this distinction and, to the contrary, repeatedly frames the relief sought as impacting "all holders of unsecured claims" and seeks declarations that would affect the treatment of all unsecured creditors.  *See, e.g.*, Compl. ¶ 29.  The CHAHG cannot now rewrite its Complaint in order to manufacture a particularized injury that is not alleged in the Complaint.  Under *Emoral*,

16

if the theory of recovery is based on facts generally available to any creditor and inures to the benefit of all creditors, then the claim is general and belongs to the estate. 740 F.3d at 879.

36.    Unable to grapple with its failure to obtain derivative standing for its generalized claims, the CHAHG relies on the broad scope of "party in interest" standing under § 1109(b), as articulated in *Truck Insurance Exchange* v. *Kaiser Gypsum Co.*, 602 U.S. 268 (2024). *See* Opp. ¶¶ 14–18. But *Kaiser Gypsum* addressed whether an insurer was a "party in interest" under § 1109(b), allowing it to raise objections to a reorganization plan—a question entirely distinct from whether a creditor group may pursue an adversary proceeding asserting generalized estate claims without derivative standing. *See* 602 U.S. at 285.

37.    Importantly, *Cybergenics* and its progeny express a clear concern that a party—like Plaintiffs here—"might use § 1109(b) to 'usurp the trustee's role as representative of the estate.'" *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 561 (3d Cir. 2003).

38.    The CHAHG attempts to sidestep the issue raised by the *Cybergenics* court by re-arguing that it has standing under Bankruptcy Code sections 502—which the CHAHG never invoked in its Complaint—and 506 to pursue the relief sought in the Complaint because the Complaint, like the dispute in *In re Weinstein Co. Holdings, LLC*, 595 B.R. 455 (Bankr. D. Del. 2018), is a "quintessential creditor-versus-creditor dispute." Opp. ¶ 19. Such characterizations are incorrect, and as a result, the CHAHG's reliance on *Weinstein* is misplaced.

39.    Unlike the facts before this Court, the underlying dispute in *Weinstein* involved one secured lender objecting to the extent of two other secured lenders' prepetition security interests because the defendant-lenders were entitled to receive the proceeds of a sale of estate assets. 595 B.R. at 458. The *Weinstein* court upheld the plaintiff-creditor's right to object to such claims;

17

however, contrary to the CHAHG's assertions, the *Weinstein* court did not opine on whether "the plaintiff's claims were too generalized to confer standing." Opp. ¶ 23 (citing *Weinstein*). The CHAHG conveniently disregards the fact that, unlike *Weinstein*, the relief sought in the Complaint will not only impact itself but also affect all other claimants in Class 5 of the Debtors' plan. To the extent that the size of Barclays' allowed secured claims is adjusted downwards, there will be a corresponding increase in the size of the allowed Class 5 claim—which is comprised of claims well beyond those held by the CHAHG—thereby providing a generalized impact on a substantial portion of creditors of the Debtors' estates, not just on the CHAHG. Therefore, the relief it seeks from the Court will have consequences for the Debtors' estates, and, as such, the CHAHG should have sought and obtained derivative standing before bringing this action.

40. To support its (false) claim that the relief sought in the Complaint does not relate to estate claims, the CHAHG refers this Court to its Opposition rather than the allegations of the Complaint. *See* Opp. ¶ 29 (citing to *id.* ¶¶ 19–25).

41. The CHAHG invokes *In re C.P. Hall Co.* to argue that, as a group comprised of unsecured creditors, it has standing to challenge the scope and value of Barclays' liens because its pecuniary interest in the estates is directly affected. Opp. ¶¶ 26–27 (citing 513 B.R. 540 (Bankr. N.D. Ill. 2014)). However, *C.P. Hall* addressed only whether a trustee's Rule 9019 settlement could override a pending section 502(a) claim objection, which involved competing secured creditor interests with direct, particularized injuries—it did not address whether a creditor may bring an adversary proceeding seeking broad declaratory relief regarding lien scope and collateral valuation affecting other creditors. 513 B.R. at 546.

42. The CHAHG's reliance on *In re Mechanicsburg Fitness, Inc.* is also misplaced. *See* Opp. ¶16. In that case, the dispute turned on questions of contract enforceability and claim

18

allowance under section 502, not on the scope or value of any lien.  *See* Objection to Proof of Claim No. 1 of Susan Hildebrand, *In re Mechanicsburg Fitness, Inc.*, No. 1:16-bk-01897 (Bankr. M.D. Pa. Jan. 19, 2018), ECF No. 52; Objection to Proof of Claim No. 2 of Kevin E. Keefer, *In re Mechanicsburg Fitness, Inc.*, No. 1:16-bk-01897 (Bankr. M.D. Pa. Jan. 19, 2018), ECF No. 53 (together, the "Mechanicsburg Objections").  Moreover, while the *Mechanicsburg Fitness* court found that it was unnecessary for a party in interest to seek leave to file objections to certain proofs of claim, 592 B.R. 798, 807 (Bankr. M.D. Pa. 2018), it did not hold that a party in interest does not need to first obtain derivative standing to initiate an adversary proceeding seeking a determination as to the value of collateral as the CHAHG suggests.  Notably, the party in interest in *Mechanicsburg Fitness* made sure to establish its party in interest standing in its objections, focused on its own injuries, and did not continuously emphasize the value to creditors as a whole. *See generally* the Mechanicsburg Objections.

43.      As such, dismissal of the Complaint for lack of standing is appropriate here.

## **CONCLUSION**

For the foregoing reasons, Barclays respectfully requests that the Court stay this adversary proceeding pending confirmation of a reorganization plan, so that these issues may be resolved as part of plan confirmation where all necessary parties and stakeholders will be present and have the opportunity to address the exact issues that are the subject of this Complaint.  In the alternative, Barclays requests that the Court abstain from hearing this adversary proceeding, or dismiss the Complaint for lack of standing under Federal Rule of Bankruptcy Procedure 7012(b)(1) or, alternatively, 7012(b)(6).

Dated: March 23, 2026

**GREENBERG TRAURIG, LLP**

*/s/ Alan J. Brody*
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 443 3543
Email: Brodya@gtlaw.com

-and-

**CAHILL GORDON & REINDEL LLP**
Joel Moss, Esq. (admitted *pro hac vice*)
David G. Januszewski, Esq. (admitted *pro hac vice*)
Jordan Wishnew, Esq.
Jason M. Hall, Esq. (admitted *pro hac vice*)
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Email: JMoss@cahill.com
        DJanuszewski@cahill.com
        JWishnew@cahill.com
        JHall@cahill.com

*Co-Counsel for Defendant Barclays Bank PLC*