**LOWENSTEIN SANDLER LLP**
Jeffrey Cohen, Esq. (admitted *pro hac vice*)
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica Weisgerber, Esq. (admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: saltzmzh@debevoise.com
Email: nskaluk@debevoise.com

**LATHAM & WATKINS, LLP**
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. (admitted *pro hac vice*)
Zachary F. Proulx, Esq. (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: zachary.proulx@lw.com
Email: deniz.irgi@lw.com

*Counsel to Arawak XI, L.P.*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Jointly Administered) |
| BTG Pactual Asset Management US, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Barclays Bank PLC,<br><br>Defendant. | Adv. Pro. No. 26-01041 (MBK) |

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**ARAWAK XI, L.P.'S JOINDER TO BARCLAYS BANK PLC'S REPLY IN FURTHER SUPPORT OF MOTION TO STAY OR DISMISS THIS ADVERARY PROCEEDING**

Intervenor Arawak XI, L.P. ("**Arawak XI**") respectfully submits this joinder to Defendant Barclays Bank PLC's Reply [Adv. Pro. Dkt. No. 46] (Barclays' "**Reply**") in further support of its Motion under Federal Rules of Bankruptcy Procedure 7012(b)(1) and 7012(b)(6) to Stay, Abstain, or Dismiss the Adversary Proceeding [Adv. Pro. Dkt. No. 16] (Barclay's "**Motion**").[2]  Arawak XI joins in and adopts the arguments in Barclays' Reply and respectfully submits the following grounds in further support of a stay or dismissal of this Adversary Proceeding.

## PRELIMINARY STATEMENT

1.      The Cross-Holder Group's Opposition [Adv. Pro. Dkt. No. 44] (the Cross-Holder Group's "**Opposition**") does nothing to justify this Adversary Proceeding.  Try as it might to articulate why the Adversary Proceeding is not wholly redundant of ongoing plan confirmation proceedings, or to identify some particularized injury alleged in its Complaint, the Cross-Holder Group comes up empty-handed.  Instead, the Opposition mischaracterizes the Complaint, mischaracterizes what this Adversary Proceeding stands to achieve, and mischaracterizes applicable law.  At bottom, this Adversary Proceeding appears to be a tactic to impede ongoing confirmation proceedings—proceedings in which the Cross-Holder Group has had every reasonable opportunity to litigate the very issues it raises in the Complaint and *is in fact litigating those issues*.  The relief that the Complaint seeks will be adjudicated at plan confirmation.  Respectfully, the Court should stay this Adversary Proceeding pending plan confirmation or, alternatively, dismiss the Complaint for lack of standing under Federal Rules of Bankruptcy Procedure 7012(b)(1) and 7012(b)(6).

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or Arawak XI's Joinder thereto [Adv. Pro. Dkt. No. 36] (Arawak XI's "**Joinder**").

## **ARGUMENT**

**I.    The Adversary Proceeding Raises Issues That Can, Should, and Will Be Resolved at Plan Confirmation**

2.    The Opposition musters little of substance in response to the motion to stay the Adversary Proceeding.  What the Cross-Holder Group does say, and what it actually alleges in its Complaint, underscores that litigation of the Adversary Proceeding at this juncture would serve no purpose—and only thwart the orderly and efficient administration of these chapter 11 cases.

3.    *First*, the Cross-Holder Group claims that resolving the Adversary Proceeding "now" would "streamline the confirmation process."  Opp'n ¶ 32.  It would not.  In the five-plus weeks since the Cross-Holder Group filed the Adversary Proceeding, it has made no effort to expedite it or place it on the same track as plan confirmation proceedings—now just over a week away.  To the extent not mooted by plan confirmation, the Adversary Proceeding would necessarily follow the confirmation process (due to the confirmation timeline), not facilitate it. The Adversary Proceeding presents no "threshold" issues.

4.    Even if it had been scheduled on the same timeline, the Adversary Proceeding would not add anything to the confirmation process.  The Cross-Holder Group has no response to the fact that, in the context of plan confirmation in the main bankruptcy case, it has been seeking discovery on the very topics it purports to place at issue in the Adversary Proceeding—and has been doing so since before the Complaint was filed.  *See* Arawak XI's Joinder ¶ 12.  The Cross-Holder Group has already produced expert reports on these same topics, including on the value of unencumbered assets, and deposed and/or cross-examined the Debtors' fact and expert witnesses on them—all outside the confines of the Adversary Proceeding.  The Cross-Holder Group identifies no discovery, or material procedural benefits, that it is not already availing itself of as

part of the confirmation process.[3]  In any event, any discovery on these issues nominally tied to the Adversary Proceeding would be inherently duplicative of existing discovery.

5.      *Second*, the Cross-Holder Group argues that the Adversary Proceeding should not be stayed pending confirmation proceedings (even though it has made no effort to resolve the Adversary Proceeding first), because what the Complaint requests "must" be adjudicated in an adversary proceeding.  Opp'n ¶¶ 35–36.  But that position has no bearing on whether a *stay* of an adversary proceeding is warranted, which lies within the discretion of the bankruptcy court.  Where, as here, an adversary proceeding substantially overlaps with confirmation proceedings, courts can and do stay the former.  *See, e.g.*, *In re Financial Oversight & Management Bd. for Puerto Rico*, 617 B.R. 397, 413 (D.P.R. 2020) (staying adversary proceeding where it overlapped with plan-related determinations on the basis that a stay pending confirmation was prudent and in the interest of judicial economy).  For all the reasons explained in Barclays' Motion and Arawak XI's Joinder, this Court should stay the Adversary Proceeding here too.

6.      To be sure, a proceeding to determine the validity, priority, or extent of a lien may be commenced via adversary proceeding.  Fed. R. Bankr. P. 7001(b).  But the gravamen of the Cross-Holder Group's Complaint is a garden-variety collateral valuation challenge brought pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012(b).  *See, e.g.*, Compl. ¶ 54.  The Opposition effectively concedes that such challenges are properly brought "in connection with confirmation."  *See* Opp'n ¶ 36.  As it must, because Bankruptcy Rule 7001(b) expressly excludes Rule 3012 proceedings, and Section 506(a) contemplates that secured claim determinations "shall be determined . . . in conjunction with any hearing on such disposition or

---

[3] Contrary to the Cross-Holder Group's blatant mischaracterization, Opp'n ¶ 34, Arawak XI's position is not that the Cross-Holder Group "should have waited" until plan confirmation before litigating these issues.  It is that the Cross-Holder Group *is already* challenging these issues as part of plan confirmation, where they are appropriately resolved. *See, e.g.*, Arawak XI's Joinder ¶¶ 8, 12.

use [of property secured by a lien] or on a plan affecting such creditor's interest." 11 U.S.C.

§ 506(a)(1). Consistent with this statutory text, courts routinely resolve collateral valuation

disputes in connection with confirmation rather than standalone plenary proceedings. *See, e.g., In*

*re Terrestar Corp.*, 2012 WL 1028218, at *1 (Bankr. S.D.N.Y. Mar. 26, 2012); *In re Hawaiian*

*Telcom Commc'ns, Inc.*, 430 B.R. 564, 580–81, 602–03 (Bankr. D. Haw. 2009).[4]

7.       Moreover, these collateral valuation issues are *in fact* being litigated as part of plan

confirmation. That is where they should be litigated. As the Cross-Holder Group acknowledges,

collateral valuation under Section 506(a) is context-dependent. *See* Opp'n ¶ 39. And as the Third

Circuit affirmed in *Heritage Highgate*, to which the Cross-Holder Group pays no heed, "the fair

market value of the [collateral] as of the confirmation date controls whether [creditors'] claims are

secured," and the "appropriate time" to assess collateral value is "on, or close to, the plan's

confirmation date." *In re Heritage Highgate, Inc.*, 679 F.3d 132, 143 & n.9 (3d Cir. 2012). The

Cross-Holder Group identifies no determination it seeks with respect to collateral valuation via

this Adversary Proceeding that it does not, or cannot, obtain as part of ongoing confirmation

proceedings.

8.       While the Cross-Holder Group purports to seek a determination of the "extent" of

Barclays' liens, Compl. ¶ 36, the relief it seeks with respect to lien scope is illusory. Count I of

the Complaint amounts to little more than a request for a tautological declaration that the Debtors'

encumbered assets do not include their unencumbered assets. *See* Compl. ¶ 45. At bottom, Count

I presents a contract-interpretation dispute, not a challenge to "determine the validity, priority, or

---

[4] The Opposition cites *In re Mansaray-Ruffin*, 530 F.3d 230, 234 (3d Cir. 2008), for the proposition that Bankruptcy Rule 7001 requires all lien challenges to be brought via an adversary proceeding. Opp'n ¶ 35. Not so. *Mansaray* made clear that lien challenges "related to the valuation of the collateral," as here, need *not* be brought by adversary proceeding, and could instead be resolved through plan confirmation. 530 F.3d at 236. Insofar as a proceeding to *invalidate* a lien does, the Cross-Holder Group does not seek that relief.

extent of a lien or other interest in property" that Bankruptcy Rule 7001(b) was designed to address. It is unclear, then, what litigation of this Count could possibly achieve. The Term Loan Security Agreement speaks for itself, and the Cross-Holder Group identifies no ambiguity in it. The Cross-Holder Group cannot manufacture a need for an adversary proceeding merely by dressing a "claim" in Rule 7001 clothing.

9. *Third*, the Cross-Holder Group argues that a stay would somehow prejudice it. Opp'n ¶¶ 42–43. It again relies on the (mistaken) premise that resolution of collateral "scope and value" issues is a gating item to confirmation, when it has done nothing to sequence the resolution of those issues accordingly and when it is nevertheless actively litigating these issues as part of confirmation. By contrast, permitting this Adversary Proceeding to forge ahead in parallel with the confirmation process would needlessly impose substantial costs on the Debtors' estates, result in duplicative discovery, and increase the prospect of inconsistent rulings. The Debtors plainly have an interest in valuation of the collateral securing Barclays' liens, but are not yet parties to the Adversary Proceeding. The Debtors are parties to the plan confirmation proceedings, where the Court can grant complete relief after hearing from all parties in interest, the Cross-Holder Group included.

## II. The Cross-Holder Group Lacks Standing to Bring Its Declaratory Judgment Claims

### A. The Cross-Holder Group Lacks Statutory Standing

10. If the Court declines to stay this Adversary Proceeding, it should dismiss the Complaint because it asserts generalized estate claims that the Cross-Holder Group lacks authority to bring under the Bankruptcy Code. The Cross-Holder Group repeatedly alleged that the declaratory relief it seeks, if granted, would inure to the benefit of unsecured claimants. *E.g.*, Compl. ¶ 29 (alleging that valuation of "Collateral" impacts "which [assets] should be shared ratably with all holders of unsecured claims"); *id.* ¶ 35 (alleging that valuation of "Unencumbered

Assets" stands to increase "property available to satisfy claims of unsecured creditors"). The Opposition does not disclaim those allegations, nor could it. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (noting "well-settled rule that a party is bound by what it states in its pleadings").

11.     Under Third Circuit precedent, a claim is property of the estate when its theory of liability is based on facts generally available to any creditor. *In re Whittaker Clark & Daniels Inc*, 152 F.4th 432, 448 (3d Cir. 2025) (citing *In re Emoral, Inc.*, 740 F.3d 875, 879–81 (3d Cir. 2014)). The Bankruptcy Code vests the trustee with exclusive authority to bring such claims, ensuring they are pursued centrally for the benefit of all creditors rather than piecemeal by individual ones. *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280, 282 (3d Cir. 2020). The Cross-Holder Group attempts to evade that rule by labeling its claims "personal" on the ground that they affect recoveries of holders of Junior Funded Debt Claims in Class 5, but not of General Unsecured Claims in Class 6. Opp'n ¶ 21. But that framing only confirms the claims are class-wide. And within Class 5, the Cross-Holder Group holds only a fraction of the $3.2 billion in projected allowed claims, and its alleged injury is indistinguishable from that of other Class 5 creditors. *Compare* Case No. 26-10910, Dkt. No. 18 at 12, *with* Case No. 26-10910, Dkt. No. 397-1.[5] The Cross-Holder Group's claims are therefore "generalized," not based on facts unique to it. *See Emoral*, 740 F.3d at 880.

12.     The Opposition attempts to distinguish *Emoral* and *Cybergenics* on the ground that those cases involved "estate claims against third parties for wrongdoing" rather than individual creditor claims ostensibly brought under Sections 502 and 506. *See* Opp'n ¶¶ 19, 24. But the Third Circuit's framework does not turn on the statutory mechanism invoked; it turns on the

---

[5] Notably, Class 5 comprises over 90% of the projected amount of unsecured claims in these chapter 11 cases. Case No. 26-10910, Dkt. No. 18 at 12–13.

substance and effect of the relief sought.  *See Emoral*, 740 F.3d at 879–81.  Here, the relief the Cross-Holder Groups seeks would, in substance, expand the pool of unencumbered assets and increase recoveries for the vast majority of unsecured creditors; these are among the hallmarks of a generalized estate claim.  Because the Cross-Holder Group failed to obtain derivative standing to pursue these claims, it cannot assert them.  *See generally Official Comm. of Unsecured Creditors v. Cybergenics Corp.*, 330 F.3d 548 (3d Cir. 2003) (en banc).[6]

13.     The Cross-Holder Group contends that the Interim DIP Order permits it to assert the Complaint's declaratory judgment claims because they "do[] not relate to estate claims." Opp'n ¶ 29.  That argument is circular, as it assumes the conclusion in dispute—namely, that the Cross-Holder Group's claims are personal rather than generalized, when they are properly understood as the latter.  Although the Interim DIP Order provides the procedural mechanism for bringing challenges, it does not eliminate the requirement that a party obtain derivative standing before asserting estate claims.  Interim DIP Order ¶ 21.  The Cross-Holder Group undisputedly did not seek or obtain such authority before filing its Complaint.

**B.     The Cross-Holder Group Lacks Constitutional Standing**

14.     The Cross-Holder Group must also satisfy the constitutional requirements of Article III, including that its alleged injury be concrete and particularized.  *See* Arawak XI's Joinder ¶ 18.  It again falls short.  Its alleged harm depends on multiple contingencies, including confirmation of the Debtors' proposed plan of reorganization, final allowance and reconciliation of claims, and ultimate distributions to creditors.  The Cross-Holder Group does not dispute that.

---

[6] The Cross-Holder Group's reliance on *In re Weinstein Co. Holdings, LLC*, 595 B.R. 455 (Bankr. D. Del. 2018), does not save its claims.  In *Weinstein*, one secured creditor sought to invalidate liens held by two other secured creditors, in the context of determining the allocation of proceeds of the sale of the debtors' assets and how that allocation impacted the plaintiff's individual recoveries.  *See id.* at 457–61.  On those distinct facts, the court concluded that the plaintiff possessed statutory standing to bring its declaratory judgment claims.  *Id.* at 463–64.

Instead, it argues that it has a "pecuniary" interest in the "scope and value" of Barclays' liens. Opp'n ¶¶ 26–28. Even if so, plaintiffs asserting causes of action in a complaint, including one brought via adversary proceeding, must demonstrate constitutional standing "for each claim that they press and for each form of relief that they seek." *Madlinger v. Enhanced Recovery Co., LLC*, No. CV 21-00154 (FLW), 2022 WL 2442430 at *4 (D.N.J. July 5, 2022) (quoting *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021)). The authority on which the Cross-Holder Group relies does not stand for the proposition that a plaintiff has unbridled standing to seek declaratory judgments on matters relating to contract interpretation and collateral valuation, especially where those matters are not properly resolved via adversary proceeding in the first place.

## RESERVATION OF RIGHTS

15.    Arawak XI reserves the right to join in additional arguments raised by any other parties related to the Complaint or the Motion, and to participate in and be heard on all matters related to the Complaint or the Motion.

## CONCLUSION

16.    For the foregoing reasons, and those set forth in the Motion, the Joinders filed in support thereof, and Barclays' Reply, Arawak XI respectfully requests that the Court stay the Adversary Proceeding pending conclusion of the parallel plan confirmation proceedings or, in the alternative, dismiss the Complaint for lack of standing, and grant Arawak XI such other and further relief as the Court deems just and proper.

Dated: March 23, 2026

**LOWENSTEIN SANDLER LLP**
By */s/ Eric S. Chafetz*
Jeffrey Cohen, Esq. (admitted *pro hac vice)*
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

-and-

**LATHAM & WATKINS, LLP**
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. (admitted *pro hac vice*)
Zachary F. Proulx, Esq. (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: zachary.proulx@lw.com
Email: deniz.irgi@lw.com

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica Weisgerber, Esq. (admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: saltzmzh@debevoise.com
Email: nskaluk@debevoise.com

*Counsel to Arawak XI, L.P.*

10